

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| MICHELLE CASANOVA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:05-CV-0227 |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant.[1] § | |

# REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff MICHELE CASANOVA brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance and supplemental security income benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

## I.
## PROCEEDINGS

Plaintiff applied for disability insurance benefits on April 3, 2003, (Transcript [hereafter Tr.] 54-57), and for supplemental security income (SSI) benefits under Title XVI of the Social Security Act on March 24, 2003, (Tr. 420-22). Plaintiff alleges she has been unable to work

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue should be substituted as the defendant in this suit.

since January 29, 2003, due to severe back pain. (Tr. 54, 81, 420). The Social Security Administration denied benefits initially and upon reconsideration.[2]

An administrative hearing was held before Administrative Law Judge (ALJ) William F. Nail, Jr., on May 7, 2004. (Tr.444-464). The ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 21). At the time of the administrative hearing, plaintiff was 32 years old[3] and a high school graduate with approximately one year of college. (*Id.*). Plaintiff's past employment included working as a child care assistant and as a cashier. (Tr. 21, 82).

On November 5, 2004, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 20, 25). The ALJ found that plaintiff suffered from lumbar pseudoarthrosis, and while such impairment was found "severe" within the meaning of the regulations, it was not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 22, 25, Finding Nos. 3 and 4). The ALJ found plaintiff's subjective complaints of pain only generally credible referencing the following factors: (1) Dr. Neil Veggeberg, one of plaintiff's treating physicians, stated plaintiff was temporarily disabled, but never stated plaintiff was permanently disabled; (2) another treating physician, Dr. Walter S. Piskun, who was treating plaintiff contemporaneously with Dr. Veggeberg, never stated plaintiff was disabled; (3) plaintiff was seemingly unimpaired in carrying out her daily routine of chores; and, (4) plaintiff stated in her

---

[2]Consultant physicians for the Texas Department of Disability Services, which determined plaintiff's RFC initially and upon reconsideration, found plaintiff retained an RFC for light work and was, therefore, not disabled. (Tr. 178-85).

[3]Plaintiff was technically 31 years old the day of the hearing, but turned 32 on the next day. (Tr. 448). For purposes of the ALJ's decision, plaintiff was treated as a 32-year-old individual. (Tr. 21).

Disability Report that she stopped working because she could not find child care. (Tr. 24-25). The ALJ concluded plaintiff retained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 26, Finding No. 6). Based on this RFC, the ALJ found plaintiff would not be precluded from performing her past work as a cashier. (Tr. 26, Finding Nos.7 and 8).

Upon the Appeals Council's denial of plaintiff's request for review on April 15, 2005, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 12-15). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUE

The only issue before the Court is whether the ALJ's determination at Step 4 of the five-step sequential analysis—that plaintiff retained the ability to perform her past relevant work as a cashier, and, therefore, was not disabled—was supported by substantial evidence.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining

physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

## IV.
## MERITS

In her brief, plaintiff argues she provided "abundant evidence" to show her disability, and that "the evidence cited by the ALJ in support of his finding of non-disability is flimsy, full of non-sequiters [sic], and is totally insubstantial." (Plaintiff's Brief at 5). Plaintiff presents the Court with a history of her treatment, citing various measures her treating physicians employed to relieve her pain, which plaintiff alleges the ALJ did not properly credit. (*Id.* at 4). Plaintiff argues the ALJ failed to "cite even a shred of medical findings or opinion that impugn

[plaintiff's] severe and disabling pain. The only thing [the ALJ] cites [in] that regard is what he perceives as shortcomings in the evidence from the treating physician's [sic]." (*Id.* at 6). Plaintiff also asserts Dr. Neil Veggeberg's determination that plaintiff was "temporarily totally disabled"should have been considered a finding of permanent disability because Dr. Veggeberg never indicated the disability ceased to exist. (*Id.* at 7). On the other hand, plaintiff argues the ALJ erred by relying on the absence of a finding of disability by Dr. Walter S. Piskun to support his finding of no disability. (*Id.* at 6-7). Finally, plaintiff alleges since there was no medical evidence contradicting her disability, the ALJ's finding that plaintiff is not disabled is without the support of substantial evidence. (*Id.* at 9).

The Commissioner argues the ALJ's opinion is supported by substantial evidence, and that plaintiff "merely evaluates the ALJ's comments regarding the medical evidence, while ignoring the numerous examples already provided in the ALJ's decision." (Defendant's Brief at 4) (internal citations omitted). The defendant further argues, the medical evidence presented is inconsistent; thus, it was up to the ALJ to evaluate all of the evidence and determine what weight should be given to various opinions. Likewise, it was within the discretion of the ALJ to reject the opinion of any physician when the evidence supported a conclusion contrary to that physician's opinion. (*Id.* at 6).

The Commissioner further asserts plaintiff's allegations of pain, and subjective complaints of pain, are not credible because they are inconsistent with the objective medical evidence. (*Id.* at 10-12). Citing Social Security Ruling (SSR) 96-7p, the Commissioner argues consistency is a major indicator of credibility, and that plaintiff's inconsistent testimony as to her daily activities and limitations, coupled with the inconsistency of the medical evidence,

supported the ALJ's determination that plaintiff's allegations of disabling pain were only generally credible. (*Id.* at 12-13).

A.
The Medical Evidence

The medical evidence of record shows plaintiff suffers from back pain and was treated for that condition from January 2003 through at least July 2004. There does not appear to be any real dispute that plaintiff suffers pain, and that she has sought treatment from medical professionals to alleviate the pain. Instead, the dispute is whether the pain plaintiff suffers is so severe as to render her completely disabled from performing substantial gainful activity.

To the extent plaintiff's analysis of the evidence and argument to the Court concern whether plaintiff suffers from a documented condition which can reasonably be expected to produce pain, there is no real dispute as to the fact plaintiff does have a back condition which produces pain. Consequently, any generalized argument that plaintiff's impairment is capable of producing pain is not critical to the ultimate issue of whether such pain is totally disabling. Further, even if plaintiff persuades this Court that she suffers from pain to the degree that such is disabling, this Court does not review the matter *de novo*. In order for the administrative decision to be reversed, plaintiff must show not only that the evidence might support a finding of disabling pain, but plaintiff must also show that the administrative decision to the contrary did not have substantial evidence to support it. Finally, because of the subjective nature of pain, the plaintiff's burden to show reversible error by the defendant is high.

The first hurdle plaintiff must overcome is that the objective medical evidence is in conflict. While the evidence is consistent regarding the fact plaintiff suffers from back pain, there is conflicting evidence of the degree of such pain. Several objective tests show no

impairment of plaintiff's lower back. On January 23, 2003, six days before plaintiff's alleged onset date of January 29, 2003, plaintiff had an MRI of the lumbar spine, which detected no abnormalities. (Tr. 123). On March 14, 2003, plaintiff had a bone scan, which also showed no "abnormalities noted within the region of the tailbone." (Tr. 159). On April 22, 2003, plaintiff had an x-ray of the spine, which demonstrated she had good range of motion and "[n]o malalignment nor definite evidence of listhesis." (Tr. 158). Dr. Jeffrey D. Cone found plaintiff had possible bilateral pars defects in the sixth lumbar segment, but also found plaintiff had no focal deficits, only slightly diminished range of motion in the lower back, and good motor strength. (Tr. 247).[4] On August 6, 2003, Dr. Piskun examined plaintiff. After the exam, Dr. Piskun noted, "The motor examination of the upper and lower extremities is normal. There is no Horner's, Hoffman's, Babinski or clonus. The reflexes are symmetrical. Straight leg raising is negative." (Tr. 257). Dr. Piskun assessed plaintiff as having a possible defect in the pars interarticularis.[5] (*Id.*)

In conflict with this evidence, however, are several tests and examinations indicating a defect. On March 11, 2003, plaintiff underwent a myelogram of the lumbar spine. (Tr. 160). The interpreting physician's impressions of the test were: (1) there was no neural structural impingement; (2) "[t]he sixth lumbar vertebra right transverse process [was] noted to articulate with the sacrum, and there [were] degenerative changes noted at the articulation"; (3) there was vacuum phenomenon in the transverse process/sacral articulation; (4) the sixth lumbar vertebra

---

[4] In his letter describing his findings to Dr. Veggeberg, Dr. Cone stated, "As you know, [plaintiff] has had symptoms for a couple of years but her studies have been generally under-whelming." (Tr. 247).

[5] Dr. Piskun recommended plaintiff wear a back brace and fitted her for one on March 1, 2004. (Tr. 331). Dr. Piskun discussed surgery with plaintiff on July 26, 2004, (Tr. 417), and again on October 28, 2004, (Tr. 440), but ultimately decided that plaintiff would not benefit from the surgical procedures available at that time. (*Id.*)

had sclerosis of the pars; (5) there was a faint line noted on the left pars suggesting either an impending pars fracture or a healing pars defect; and (6) the existence of transitional vertebra involving L6 and exaggerated lordosis were both risk factors for pars defects. (Tr. 161). On May 12, 2003, plaintiff was treated for pain in the emergency room at Baptist Saint Anthony's Hospital in Amarillo, Texas.[6] There, the treating physician noted plaintiff had "marked tenderness to palpation of the sacral spine with no signs of heat or redness." (Tr. 154).

On May 21, 2003, plaintiff underwent a CT-Post discogram, which showed plaintiff had "a right-sided pseudarthrosis of the lateral element of L6 where it abuts the right sacral ala" and had "vacuum phenomenon and sclerosis at this pseudoarticulation."[7] (Tr. 156). On June 30, 2004, plaintiff had a CT L-spine and CT reconstruction. (Tr. 418). The CT showed plaintiff suffered from degenerative facet joint disease at the L4-5 and L5-S1 levels, the former of which was more severe. The CT also showed that "[t]he L5 vertebral body is a transition vertebra with partial sacralization which accounts for the relatively narrowed L5-S1 disk space. There is an articulation between the left transverse process of L5 and the sacral ala. This articulation is degenerative in appearance." (Tr. 419).

In addition to the medical evidence outlined above, the record reflects plaintiff, throughout the relevant period, *i.e.*, the period running from the alleged onset date of January 29, 2003 through the ALJ's decision of November 5, 2004, was treated by Dr. Veggeberg. On February 12, 2003, Dr. Veggeberg assessed plaintiff as suffering from lumbar disc disease and

---

[6] Indeed, plaintiff made numerous trips to the emergency room at Baptist Saint Anthony's, (Tr. 148, 302, 318), as well as Northwest Texas Hospital in Amarillo, (Tr. 274, 284, 295), and Moore County Hospital in Dumas, Texas, (Tr. 125, 133), for the treatment of pain in her lower back. On most occasions, treating physicians ordered the administration of pain injections and suggested ice massage breaks for reduction of pain.

[7] Dr. Branch T. Archer, the physician interpreting the diskogram, noted, "This pseudarthrosis could be a source of localized pain." (Tr. 157).

injected 40 mg of Kenalog (a steroid) into the left iliolumbar region. (Tr. 142, 172). Dr. Veggeberg also recommended physical therapy.[8] (Tr. 172). On March 7, 2003, Dr. Veggeberg conducted a follow-up exam on plaintiff, during which plaintiff complained of worsening pain and of receiving no lessening of pain from either the injection or the physical therapy. In light of the normal results from plaintiff's MRI of January 23, 2003, Dr. Veggeberg recommended obtaining a myelogram of the lumbar spine in order to examine the left L5 and S1 nerve roots. (Tr. 171). On March 21, 2003, Dr. Veggeberg recommended plaintiff continue working on exercises for her back. (Tr. 170). On April 8, 2003, Dr. Veggeberg observed,

> [Plaintiff] has severe, incapacitating pain in her lower back on the left hand side. She has the pars defect at what appears to be L6-S1 which normally [would] not be considered significant, but due to the fact that is where the bulk of her symptoms are it is quite likely that that is the source of her symptoms.

(Tr. 168).

On April 29, 2003, Dr. Veggeberg administered the first of a series of epidural steroid injections, (Tr. 167),[9] and prescribed plaintiff be off work until July 7, 2003. (Tr. 343). On June 5, 2003, Dr. Veggeberg administered a nerve block over the left L6 nerve root.[10] (Tr. 166). On June 26, 2003, and again on July 18, 2003, Dr. Veggeberg administered an epidural steroid injection. (Tr. 164, 165). After the visit of July 18, Dr. Veggeberg stated, "She continues to be temporarily totally disabled and will be so far at least 2 more months." (Tr. 164). Although Dr.

---

[8] Plaintiff had a physical therapy evaluation on February 18, 2003. The therapist recommended four days of therapy per week for three weeks. (Tr. 137). Plaintiff was unable to complete her physical therapy due to pain and reaction to medications she was taking. (Tr. 127).

[9] Presumably, plaintiff received a second epidural steroid injection on May 21, 2003, because Dr. Veggeberg mentions a visit occurring on that date and because that is three weeks after her prior injection. (Tr. 166). However, no document exists in the record to confirm this presumption.

[10] Also at the visit of June 6, Dr. Veggeberg prescribed plaintiff remain off work for two months. (Tr. 343).

Veggeberg states in his record of the July 18 visit that he will see plaintiff again in three weeks, the next recorded visit occurred on September 16, 2003.[11] After that visit, Dr. Veggeberg noted,

> [Plaintiff's] neck and shoulders show good strength and ROM [range of motion]. Her lower back shows a flattening of the lumbar lordosis. There is exquisite tenderness on extension and rotation to the left side. Straight leg raising was equivocal. No major neurological deficits were noted.
>
> I feel she has 6 lumbar vertebrae and at L6-S1 she has a mild disc derangement that has resulted in a significant facet arthropathy causing her pain.

(Tr. 259).

On January 30, 2004, Dr. Veggeberg entered a report on an x-ray conducted on plaintiff, concluding the L-spine was normal with mild lumbar facet disease and a mildly spatulated transverse process on the right side at L5-S1. (Tr. 336). On February 9, 2004, Dr. Veggeberg noted, "[Plaintiff's] lower back shows a flattening of the normal lumbar lordosis. There is pain on extension and rotation to either side. Straight leg raising was negative. No major neurological deficits were noted." (Tr. 335). On April 29, 2004, plaintiff's last visit of record to Dr. Veggeberg, the doctor observed,

> Her neck and shoulders show good strength and ROM. Her lower back is somewhat rigid. There is pain on extension and rotation to either side. Straight leg raising was negative. No major neurological deficits were noted.
> I feel she has lumbar [degenerative disc disease] with facet atrophy.
> I recommend the patient work on exercises for the neck, shoulders, and lower back. . . .

(Tr. 334).

---

[11] During this time frame, plaintiff saw Dr. Piskun once on August 6, 2003, for evaluation, (Tr. 257), and visited the ER at Northwest Texas Hospital twice, first on July 23, 2003, (Tr. 295), and again on September 9, 2003, (Tr. 284). Other than these visits, plaintiff's medical records do not indicate she sought any treatment for pain.

B.
## The ALJ's Decision

When the medical evidence presented, including opinions by treating physicians, is not consistent, the ALJ must weigh all of the evidence. 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted). An ALJ may disregard a treating physician's opinion only after considering the following factors:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

*Id.* at 456. The ultimate decision whether a claimant is disabled, however, remains with the ALJ, and the ALJ need not give controlling weight to a treating physician's determination that a claimant is disabled. 20 C.F.R. § 404.1527(e)(1); *see also* Social Security Ruling (SSR) 96-5p.

As set out above, the results of the numerous objective tests plaintiff underwent throughout the relevant period, *i.e.*, January 2003 through November 2004, are inconsistent. An MRI, a bone scan, and an x-ray showed no defects to plaintiff's lower spine, and while the results of these tests do not establish that plaintiff has no impairment, they have evidentiary value as to the severity of plaintiff's pain. On the other hand, a myelogram, a CT post-discogram, and a CT-reconstruction all showed some defect to plaintiff's lower spine. These inconsistent tests, as well as the failure of any other treating physician to draw the same conclusion as Dr. Veggeberg (that plaintiff was temporarily totally disabled), created a fact situation which placed the ALJ within his discretion in weighing the evidence and determining

plaintiff's impairment was not disabling. The ALJ did not completely reject Dr. Veggeberg's opinion. Instead, the ALJ cited the fact that Dr. Veggeberg never made a *permanent* disability determination in support of the ALJ's determination that plaintiff retained the ability to engage in her past work as a cashier. The ALJ's decision was also supported by the determination of the Texas Department of Disability Determination non-examining physicians' determination that plaintiff retained an RFC for light work. *See* 20 C.F.R. § 404.1527(f)(2).

Therefore, while pain itself can constitute a disabling impairment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994), such pain is disabling only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990). The fact that plaintiff suffers some pain while working is not enough to support a finding of disability. *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983). Rather, "[p]laintiff must show that she is so functionally impaired that she is precluded from engaging in substantial gainful activity." *Id.* (citations omitted). The decision whether plaintiff's pain is disabling rests soundly within the discretion of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

## C.
### Plaintiff's Credibility

In determining whether pain is disabling, the ALJ bears the responsibility for resolving conflicts in the evidence (*See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)), and "the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco*, 27 F.3d at 163. The ALJ's determination is entitled to considerable deference. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).

In the instant case, the ALJ considered plaintiff's allegations of pain, but ultimately found them not totally credible. (Tr. 25, Finding No. 5). In support of his credibility

determination, the ALJ wrote the following:

> First, the undersigned . . . takes note that Dr. Veggeberg did indicate [plaintiff] was temporarily disabled from April 2003 to September 2003 [citations omitted]. However, Dr. Veggeberg did not indicate [plaintiff] was permanently disabled and unable to work. Second, Dr. Piskun did not indicate that [plaintiff] was disabled and unable to work. Third, the undersigned takes note that [plaintiff] is actively involved in daily household chores and in driving. She did not identify any limitations in her activities. [Plaintiff's] activities of daily living are inconsistent with those of a disabled person. Fourth, [plaintiff] stated that she was unable to find child care. Therefore, she stopped working [citation omitted].

(Tr. 24-25). In determining that plaintiff's allegations of pain were only generally credible, the ALJ was acting soundly within his discretion because the task of judging a claimant's credibility regarding alleged pain is solely the province of the ALJ. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ considered the limitations testified to by plaintiff,[12] as well as the evidence regarding her treatment for pain. He discussed inconsistencies he saw between the medical evidence, plaintiff's allegations, and her daily activities.[13] He fulfilled his duty to consider plaintiff's alleged pain and limitations, as well as his duty to explain why he did not fully credit those allegations. In deciding plaintiff retained the ability to engage in her past

---

[12] At the hearing, plaintiff testified she was able to walk only about a half of a block without resting, was able to sit for only about 15-20 minutes at a time, could lift only 10 pounds, could not kneel, and could not bend over. (Tr. 461). However, plaintiff also testified she was able to care for her daughters, drive them to school, water the lawn, and otherwise care for herself and her household. (Tr. 455, 458-59). Plaintiff did not mention any limits to her ability to care for herself or her daughters, *e.g.*, an inability to bend over to tie shoes or to push a vacuum cleaner. Plaintiff also testified to taking a trip to Mexico in May 2003, (Tr. 24, 456), which would have required her to sit in a car for hours at a time.

[13] Admittedly, the ALJ's opinion leaves something to be desired for purposes of judicial review. He certainly could have better explained his determination in order to better facilitate review by this Court, and this Court recommends that, in the future, the ALJ better articulate his reasoning. However, the Fifth Circuit has clearly held that administrative law judges do not have to follow formalistic rules in rendering their decisions, so long as it is apparent they followed the law. *Falco*, 27 F.3d at 164.

relevant work as a cashier (light work), but not her past work as a child care attendant (medium work), the ALJ incorporated into his RFC determination those limitations on plaintiff's ability to work resulting from her pain that he found credible.

As a result, the Court finds the ALJ's determination that plaintiff's pain did not render her disabled is supported by substantial evidence as that term is defined, *i.e.*, more than a scintilla, but less than a preponderance . By her testimony, plaintiff stated she was able to care for herself and her children, to drive her children to school, to take care of household chores, and to ride in a car for extended periods of time. In the majority of her physical exams during the period spanning from January 2003 through November 2004, plaintiff demonstrated good range of motion, good motor strength, and no neural deficits. None of her doctors ever placed *specific* limitations upon plaintiff caused by her back disorder, except Dr. Veggeberg's temporary disability determination.[14] This evidence was sufficient to support the ALJ's determination, even in light of the other evidence in the record. Again, this Court does not review the case *de novo*. This Court might not have made the same determination as the ALJ in light of plaintiff's extensive treatment for pain. That, however, is not the standard. The issue is whether the ALJ's determination is supported by substantial evidence. This Court finds that the ALJ's determination in this case is so supported. Consequently, it must be affirmed.

---

[14]The Court places little significance on defendant's argument that Dr. Piskun never found plaintiff to be disabled, and the evidence regarding Dr. Veggeberg's finding of temporary disability is of minimal significance. The defendant Commissioner routinely argues that findings of disability by doctors are entitled to little or no weight, and that the disability determination is solely reserved for the Commissioner. In light of those arguments, it would not seem proper for the Court to place substantial reliance on the fact that Dr. Piskun failed to make a determination of disability which the defendant would discount. That being said, there is, however, evidentiary value to the fact that Dr. Piskun did not place any limitations upon plaintiff.

V.
# RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

VI.
# INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation

contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).